# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juana Ann Valdez-Canez, | No. CV-16-02780-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Juana Ann Valdez-Canez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the ALJ's decision contains reversible error and there are no substantial grounds for doubting that Plaintiff is disabled, the Court will reverse and remand for an award of benefits.

**I.    Background.**

Plaintiff is a 52 year-old female who previously worked as a stocker, cashier, and telephone operator. A.R. 32. On October 3, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning January 1, 2012. A.R. 20. Plaintiff's claim was initially denied on March 27, 2013, and upon reconsideration on October 15, 2013. A.R. 20. On November 5, 2013, Plaintiff filed a written request for a hearing. A.R. 20. Plaintiff appeared and testified at that

hearing with her attorney on November 12, 2014. A.R. 20. Impartial vocational expert Gretchen A. Bakkenson also testified. A.R. 20. On January 21, 2015, ALJ Patricia A. Bucci issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 34. Plaintiff sought review with the Appeals Council, which denied her request for review (A.R. 1-3), making the ALJ's decision the Commissioner's final decision.

**II.     Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and that she has not engaged in substantial gainful activity since January 1, 2012. A.R. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: status post cervical fusion, degenerative disc disease of the lumbar spine, obesity, depressive disorder, and obsessive compulsive disorder. A.R. 23. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 25. At step

four, the ALJ found that Plaintiff has the RFC to perform light work, except she can occasionally operate foot controls with her left leg and reach overhead with both upper extremities, can never climb ladders, ropes, or scaffolds, and can frequently climb ramps or stairs, stoop, crouch, kneel, and crawl. A.R. 27. Plaintiff must also avoid concentrated exposure to dangerous machinery with moving mechanical parts, as well as exposure to unprotected heights. A.R. 27. Finally, Plaintiff is limited to simple, routine, and repetitive tasks. A.R. 27. At step five, the ALJ concluded that Plaintiff is unable to perform any past relevant work, but, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. A.R. 32-33.

**IV.     Analysis.**

Plaintiff argues that the ALJ erred by (1) failing to give any reason for rejecting the opinion of examining physician Sharon Steingard, D.O.; (2) failing to consider whether Plaintiff met listing 1.04 at step three; and (3) erroneously evaluating the opinion of treating physician Ethan Kennedy, M.D. Doc. 12 at 2. Plaintiff also argues that, at a minimum, the case needs to be remanded to the ALJ to consider lay opinions from Plaintiff's family and friends which were submitted to the Appeals Council. *Id.*

Defendant concedes the first two errors and recognizes that they were harmful, but argues that the ALJ properly gave "little weight" to Dr. Kennedy's opinion. Doc. 17 at 4. The parties agree the case should be reversed and remanded, but disagree on whether the case should be remanded for an immediate award of benefits or additional administrative proceedings. *Id.* The Court will first consider whether the ALJ erred in evaluating the opinion of Dr. Kennedy.

**A.     Dr. Kennedy.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements

- 4 -

concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Dr. Kennedy has been Plaintiff's treating physician since 2008. A.R. 535. In a 2013 medical source opinion, he concluded that, in an 8-hour workday, Plaintiff can sit for maximum of one hour at a time, stand for one hour at a time, and walk for one hour at a time. A.R. 534. During an 8-hour workday, Plaintiff would be able to sit for a total of two hours, stand for a total of two hours, and walk for a total of two hours. A.R. 534. Dr. Kennedy also found that Plaintiff can occasionally lift and carry up to 25 pounds, but can never lift or carry more than 25 pounds. A.R. 534. He reported that Plaintiff cannot use her hands and arms for repetitive grasping, pushing and pulling, or fine manipulation. A.R. 534. Similarly, Dr. Kennedy found that Plaintiff cannot use her feet for repetitive pushing and pulling. A.R. 534. He noted that she can never bend, squat, crawl, or climb, but can occasionally reach. No restrictions were found with regard to exposure to unprotected heights, moving machinery, marked changes in temperature and humidity, dust, fumes, and gasses, or driving automotive equipment. A.R. 534. Dr. Kennedy reported that Plaintiff suffered from chronic symptoms, including severe pain, moderate fatigue, and moderate shortness of breath. A.R. 535. Moderate is defined on the form as a symptom likely to cause interruption of daily or work routine resulting in being off task 10% to 30% of the time, while severe refers to a symptom likely to cause interruption more than 50% of the time. A.R. 535. Dr. Kennedy noted Plaintiff's diagnosis of cervical and lumbar disc disease, and treatment by cervical fusion, medication, and physical therapy. A.R. 535. He reported that her symptoms had worsened in response to treatment, and ultimately concluded that Plaintiff cannot sustain a full-time work schedule due to severe neck and lumbar region pain related to her condition. A.R. 535.

The ALJ gave "little weight" to Dr. Kennedy's opinion because (1) "the opinion was on an attorney-supplied form where the doctor who is untrained in the regulations of the Social Security Administration, checked boxes"; (2) "the opinion provides no explanation or basis for such extreme findings other than listing diagnoses and levels of pain based on [Plaintiff's] subjective complaints"; (3) the proposed limitations are extreme "given the more recent clinical findings during musculoskeletal examinations in

Exhibit 18F and Dr. Kennedy's own clinical findings in Exhibits B11F and B19F"; and (4) Dr. Kennedy is a general practitioner and "not a specialist in the field of medicine for impairments upon which he bases his opinion." A.R. 31. The limitations assessed by Dr. Kennedy are inconsistent with those assessed by the state agency physicians and consultative examiners. *See* A.R. 77-92, 95-115, 496-500. Therefore, the Court must determine whether the ALJ's reasons for rejecting Dr. Kennedy's opinions are specific and legitimate, supported by substantial evidence. *Cotton*, 799 F.2d at 1408.

### 1. Checkbox Form.

The ALJ rejected Dr. Kennedy's opinion because it was completed on a checkbox form supplied by Plaintiff's attorney, and Dr. Kennedy was "untrained in the regulations of the Social Security Administration." A.R. 31.

Whether or not Dr. Kennedy is trained in or even familiar with the Social Security Regulations is irrelevant to the question of whether the ALJ should credit his opinion concerning Plaintiff's limitations and ability to sustain full-time work. Without any requirement of familiarity with the relevant regulatory framework, "physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability – the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). What is more, the ALJ does not explain how this alleged lack of training undermines the validity of Dr. Kennedy's opinion. Dr. Kennedy concluded that Plaintiff does not have "the stamina and ability to maintain sufficient pace and attention to sustain a full-time work schedule," but did not otherwise address the overall question of disability or express opinions as to legal conclusions. A.R. 535. An ALJ is "required to consider, and give legally sufficient reasons for rejecting, a treating physician's subjective judgments about a claimant's ability to work." *Schrader v. Colvin*, No. ED CV 14-961-PLA, 2015 WL 1061681, at *11 (C.D. Cal. Mar. 10, 2015).

It is also improper for an ALJ simply to reject a medical opinion because that opinion was formulated for a disability determination. *Reddick,* 157 F.3d at 727. Defendant concedes this point, stating, "the fact that the form was drafted by Plaintiff's

attorney is not, itself, a good reason for rejecting the opinion[, but] the fact that Dr. Kennedy's opinion was simply a series of checkboxes without significant explanation was." Doc. 17 at 7.

The Ninth Circuit has held that an "ALJ may permissibly reject check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (quotation marks and citation omitted, alterations incorporated). But *Molina* involved a situation where a non-acceptable medical source provided a check-the-box form opinion "in which she failed to provide supporting reasoning or clinical findings, despite being instructed to do so." *Id.* In a more recent case, the Ninth Circuit found that the ALJ made an "egregious and important error[] . . . [when] she failed to recognize that the opinions expressed in check-box form . . . were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

The evaluation from Dr. Kennedy notes Plaintiff's diagnosis, previous treatment and response, and an ultimate – albeit brief – explanation of Plaintiff's ability to sustain full-time work. A.R. 535. Although Dr. Kennedy did not complete a section for additional "information that will assist the reviewer in understanding the claimant's condition[,]" he did respond to all other questions. Moreover, Dr. Kennedy has been treating Plaintiff since December 2008. A.R. 535. The record contains numerous treatment notes from Dr. Kennedy pertaining to over thirty appointments from the period between June 2012 and July 2014. A.R. 465-78, 509-20, 577-88. As will be discussed further below, the ALJ has not shown that these notes fail to support Dr. Kennedy's opinions concerning Plaintiff's limitations and ability to work. As a result, the ALJ's first reason was not legitimate.

### 2. Based on Subjective Complaints.

The ALJ gave little weight to Dr. Kennedy's opinion because she found it was predicated on "levels of pain based on [Plaintiff's] subjective complaints[,]" and she did

not find Plaintiff's testimony to be credible. A.R. 28-29, 31. A physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence," however, and "the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

An ALJ must "explain how she reached the conclusion that a physician's opinion was largely based on self-reports." *Castilleja v. Colvin*, No. 2:14-CV-3105-RMP, 2016 WL 6023846, at *5 (E.D. Wash. Jan. 27, 2016) (internal quotation marks omitted). Here, the ALJ merely asserts that Dr. Kennedy's opinions relied on Plaintiff's subjective complaints of pain. She provides no basis for this conclusion, and fails to identify which of Dr. Kennedy's findings this conclusion relates to. The ALJ's conclusory statement is not the "detailed and thorough summary of the facts and conflicting clinical evidence" required for the ALJ to reject Dr. Kennedy's opinion. *Cotton*, 799 F.2d at 1408. The ALJ seems to be relying on the fact that Dr. Kennedy assessed Plaintiff's pain and fatigue symptoms in his evaluation. But nothing in the evaluation itself indicates that these assessments were based entirely on Plaintiff's subjective reports. Moreover, a review of Dr. Kennedy's treatment notes shows notations of his physical examinations of Plaintiff, diagnoses, and treatment. The Court concludes that the ALJ's third reason was not legitimate.

### 3. Inconsistent with the Record.

The ALJ gave little weight to Dr. Kennedy's "extreme" opinion because it was not supported by the "musculoskeletal examinations in Exhibit B18F" or Dr. Kennedy's own findings. A.R. 31.[1] Exhibit B18F refers to treatment records from several physicians at

---

[1] It is not clear which of Dr. Kennedy's opinions the ALJ finds extreme. Both the

- 9 -

Arizona Neurological Institute. A.R. 554-76. The ALJ does not explain how these reports are inconsistent with Dr. Kennedy's opinion or otherwise render it extreme. She does, however, discuss the exhibit elsewhere in her opinion. Specifically, the ALJ discusses an October 2013 examination by Nicholas Scott, M.D. A.R. 30. She notes that Dr. Scott's findings were generally "unremarkable," noting no swelling, erythema, infection, misalignment, asymmetry, or other defect of Plaintiff's spine. A.R. 30. But the ALJ does not explain why any of these findings contradict Dr. Kennedy's opinion. She also noted that Dr. Scott observed an "understandable limited range of motion," but "no tenderness to palpation of the cervical musculature" and "motor strength of 5/5 in the upper extremities with normal grip strength and finger abduction." A.R. 30. Acknowledging that Dr. Scott found Plaintiff to ambulate slowly and have difficulty walking on her toes and heels, the ALJ emphasizes Dr. Scott's conclusion that "the general musculoskeletal examination performed in October 2013 appeared to argue against a symptomatic, generalized musculoskeletal condition." A.R. 30.

The ALJ has already recognized at step 2 that Plaintiff suffers from the severe impairment of degenerative disc disease, leaving only the issue of whether Plaintiff's impairments justify the limitations found by Dr. Kennedy. While the ALJ's reflections on Dr. Scott's treatment notes appear to be accurate, the ALJ failed to acknowledge Dr. Scott's notation that Plaintiff's low back and pelvis demonstrated "tenderness to palpation." A.R. 574. She also failed to acknowledge that Dr. Scott found that Plaintiff's "predominantly left lower extremity pain" was likely caused by lumbar radiculitis, for which he recommended lumbar epidural steroid injections. A.R. 575. Dr. Scott's notes also state that he was waiting on lumbar imaging as part of his diagnostic testing. A subsequent treatment report from Dr. Scott dated November 2013 shows that he reviewed RAD reports from June 2012, which demonstrated "central/left paracentral annular tear

---

ALJ and the agency consulting physicians found that Plaintiff cannot lift more than 25 pounds. A.R. 27 (limiting Plaintiff to "light work); A.R. 86 (limiting Plaintiff to lifting 20 pounds occasionally and 20 pounds frequently). Thus the ALJ does not appear to find that Dr. Kennedy's limitations of the amount of weight Plaintiff can carry to be extreme.

- 10 -

with broad-based central/left paracentral disc protrusion at L5-S1" and "resultant narrowing of the left L5 neuroforamen and impingement upon the exiting left L5 nerve root." A.R. 570. This report also noted that Plaintiff's diagnostic procedures were "consistent with left sciatic neuropathy," that her radiculitis and leg and back pain were worsening, and that Plaintiff's lumbar intervertebral disc degeneration was "stable." A.R. 570. Dr. Scott again recommended an epidural steroid injection and ordered continued treatment with oxycodone and cyclobenzaprine. A.R. 570.

Dr. Scott's finding that Plaintiff had normal grip strength and finger abduction is not, without more, inconsistent with Dr. Kennedy's finding that Plaintiff is unable to engage in *repetitive* grasping, pushing, and pulling. A.R. 535. But even if considered inconsistent, this single contradiction does not constitute substantial evidence. Thus, the ALJ's conclusion that Dr. Kennedy's limitations are "extreme" in light of subsequent musculoskeletal examinations is not supported by substantial evidence.

Defendant does not discuss the report from Dr. Scott, but relies instead on treatment notes from Atul Syal, M.D. to argue that Dr. Kennedy's opinion is extreme. Doc. 17 at 11. The ALJ does not specifically cite or discuss the treatment notes of Dr. Syal, although these notes are part of Exhibit B18F, which is generally referenced by the ALJ at several points in her opinion. Defendant contends that Dr. Syal noted "giveaway weakness." *Id.* (citing A.R. 556, 563). Giveaway weakness, according to Defendant, "occurs where 'the patient suddenly givens up on the force they exert and the examiner feels a sudden decrease in resistance in the muscle being tested,' which 'is in contradistinction to true weakness where there is a smooth decrease in resistance as the examiner exerts increasing force.'" *Id.* (citing https://www.aan.com/uploadedFiles/ Website_Library_Assets/Documents/4.CME_and_Training/2.Training/4.Clerkship_and_ Course_Director_Resources/FM_Chp1_Sec4%20v001.pdf).

Defendant's contention is speculation, as the ALJ does not discuss Dr. Syal's treatment notes or his finding of giveaway weakness. The ALJ must provide specific and legitimate reasons for her conclusions; Defendant cannot cure the ALJ's failure to do so

by presenting post-hoc justifications. *McLaren v. Colvin*, No. SACV 15-1269-KK, 2016 WL 1714517, at *7 (C.D. Cal. Apr. 28, 2016); *Bautista v. Colvin*, No. 2:12-CV-03051-MHW, 2013 WL 6858131, at *8 (E.D. Wash. Dec. 30, 2013).

Moreover, Dr. Syad's strength examination found *actual* "weakness in both upper and lower extremities." A.R. 556. Dr. Syad noted that "[s]ome giveaway weakness [was] *also* noted especially in the lower extremities." A.R. 556. He did not opine as to the significance of this giveaway weakness. He did, however, note that Plaintiff had gone to the emergency room in June 2014 due to her back pain. A.R. 555. An MRI scan from that visit showed a "large annular tear at L5 and S1 with mild to moderate neuroforaminal stenosis," as well as "disc bulges at multiple levels." A.R. 555. He also found that Plaintiff had a positive straight leg raising test on the left, an antalgic gait secondary to her lower back pain, marked restrictions in her neck, tenderness in the cervical paraspinal and trapezius muscles bilaterally, and sensory loss in the lower extremities. A.R. 555-56. Finally, Dr. Syal commented that Plaintiff "continues to complain of having a lot of pain in her lower back to the point that she is not even able to sit in my office today." A.R. 557. According to Dr. Syal's report, Plaintiff was being treated with steroid injections, gabapentin, Soma, and oxycodone. A.R. 557.

Even assuming that giveaway weakness calls into question the credibility of Plaintiff's complaints, Dr. Syal's findings are clearly supported by clinical observations. This is especially true given that even with the giveaway weakness, Dr. Syal concluded that Plaintiff experienced significant weakness, pain, and physical restrictions requiring treatment. Moreover, these findings do not appear inconsistent with Dr. Kennedy's conclusions. Thus, even if the Court could attribute Defendant's arguments to the ALJ, Dr. Syad's findings do not constitute substantial inconsistent evidence which undermines Dr. Kennedy's opinion.

The ALJ added that Dr. Kennedy's opinion is unsupported by his own clinical findings. A.R. 31 (citing B11F and B19F). She provided no explanation or discussion of Dr. Kennedy's treatment notes, let alone the "detailed and thorough summary of the

facts" required. *Cotton*, 799 F.2d at 1408. As a result, the Court is unable to follow the ALJ's reasoning and cannot conclude that it is supported by substantial evidence.

### 4. Kennedy is not a Specialist.

The ALJ found that Dr. Kennedy, as a general practitioner, submitted an assessment outside the area of his expertise. A.R. 31. Generally, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citing 20 C.F.R. § 404.1527(d)(5)). The Ninth Circuit has made clear, however, that a physician's opinion cannot be disregarded simply because it addresses a topic outside his or her expertise:

> the treating physician's opinion as to the combined impact of the claimant's limitations – both physical and mental – is entitled to special weight. . . . An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments – including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.

*Lester*, 81 F.3d at 833.

Given this guidance and Dr. Kennedy's long history of treating Plaintiff, the Court concludes that the ALJ's fourth reason for discounting Dr. Kennedy's assessment, although specific, was not legitimate or supported by substantial evidence. This conclusion is further supported by the fact that the ALJ gave "significant weight" to the opinions of the State agency consulting physicians who are both internists and thus do not appear to be specialists in relation to Plaintiff's impairments. Doc. 12 at 15; Doc. 27 at 12.[2]

---

[2] As Plaintiff points out and Defendants do not dispute, the State agency consulting physicians are both identified as having medical specialty code 19 (A.R. 82, 94), which signifies internal medicine, (Program Operations Manual System DI

- 13 -

## B. Remedy.

"[I]n appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019. The Ninth Circuit applies the credit-as-true rule, which requires the following three factors to be satisfied for an immediate award of benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Id.* at 1020. Courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.*

With regard to the second factor, the parties do not dispute that the ALJ erred by failing to give any reason for rejecting the opinion of Dr. Steingard and failing to consider whether Plaintiff met listing 1.04 at step three. And the Court has determined that the ALJ erred by giving "little weight" to the opinion of Dr. Kennedy.

With respect the third factor, there is no doubt that if the ALJ credited Dr. Kennedy's opinion as true, she would be required to find Plaintiff disabled. Defendant does not appear to dispute this conclusion. Plaintiff claims that the most significant medical factor keeping her out of the workforce is her inability to stand or walk for long periods of time. A.R. 50. Dr. Kennedy found that during an 8-hour workday, Plaintiff would be able to sit, stand, or walk for no more than two hours. A.R. 534. This is facially inconsistent with sustaining full-time employment. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (relying on an uncontroverted opinion that the claimant could work a maximum of four hours per day to conclude that, "[b]ecause the capability to work only a few hours per day does not constitute the ability to engage in substantial

---

24501.004). Defendant argues that "internists are specialists in physical medicine." But this is a "general" specialty and does not signify that internists are specialists in relation to Plaintiff's specific conditions, namely degenerative disc disease.

- 14 -

gainful activity, remanding this case for further administrative proceedings would serve no useful purpose") (citation omitted); *see also* SSR 96-8p.

What is more, vocational expert Bakkenson testified during the hearing that an individual with Plaintiff's age, education, and work experience and the RFC described by the ALJ at step four would be able to work as a fast food worker, cashier, and photocopy machine operator. A.R. 33, 57-59. The ALJ followed-up by asking what work would be available if this individual could only sit for two hours total, stand for two hours total, and walk for two hours total in an eight hour day. A.R. 59. Bakkenson responded that all full-time work would be eliminated. A.R. 59. Thus, it is clear that, if Dr. Kennedy's opinion is credited as true, the ALJ is required to make a finding of disability.

The only remaining issue is whether the first factor is satisfied. When considering the first factor – the completeness of the record – courts must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quotation marks and citation omitted). This includes determining "whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (quotation marks and citations omitted).

Defendant contends that it would be improper to credit Dr. Kennedy's opinion as true because the "record is not free from conflicts." Doc. 17 at 13. Specifically, Defendant refers to Dr. Briggs's opinion and the ALJ's unchallenged finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. *Id.* Dr. Briggs completed a single consultative examination of Plaintiff in March 2013 and concluded that she did not have any limitations. A.R. 499. But Dr. Briggs did not review any of Plaintiff's medical records, and the ALJ herself gave decreased weight to Dr. Briggs's opinion because "objective medical evidence obtained subsequent to the examination suggest[s] there are likely to be

some limitations, namely positive straight leg raise, evidence of disc bulges and annular tears in MRI and EMG study showing findings consistent with left sciatic neuropathy." A.R. 31. As a result, the Court cannot conclude that Dr. Briggs's opinion creates a legitimate conflict requiring remand for further proceedings.[3]

Nor can the Court conclude that the ALJ's finding concerning the credibility of Plaintiff's statements conflicts with Dr. Kennedy's opinion. The fact that Plaintiff may have been magnifying her symptoms does not call into question the credibility of a medical opinion where it has been found, as here, that the opinion did not unduly rely on Plaintiff's subjective complaints. And neither Defendant nor the ALJ identified a statement from Plaintiff that would contradict Dr. Kennedy's opinion. The ALJ relied heavily on the fact that Plaintiff provides childcare for her two grandchildren, which "can be quite demanding both physically and emotionally and is incongruent with her allegations of disabling pain and limitations." A.R. 31, 26 (citing B8F). Exhibit B8F shows that Plaintiff wakes up her grandchildren, helps them dress, takes the eldest to school, rests while the youngest naps, cooks meals with her husband, and sometimes reads or watches television with the children. A.R. 492. This is not inconsistent with disability. *See Carter v. Astrue*, No. 107CV00045-LJOSMS, 2008 WL 4078745, at \*21 (E.D. Cal. Aug. 29, 2008) ("Desiring to obtain disability benefits and wanting to raise one's children are not necessarily inconsistent.").

Throughout her opinion, the ALJ notes various medical records that she argues undermine Plaintiff's allegations of additional limitations. These records do not create a conflict with Dr. Kennedy's opinion. For example, the ALJ noted a March 2012 report

---

[3] Although the State agency consulting physicians found that Plaintiff could sit, stand, and walk for 6 hours in an 8-hour workday, "the opinions of non-treating and non-examining physicians do not, by themselves, 'constitute substantial evidence that justifies the rejection of the opinion of a treating doctor.'" *Treichler*, 775 F.3d at 1107 n.8. As a result, the conclusions of non-treating and non-examining physicians, by themselves, do not create a factual issue requiring resolution by the agency when they conflict with the opinions of a treating physician. *See id.*

indicating that Plaintiff ambulated in and out of the medical office without difficulty, but this report related to an orthopedic appointment intended to assess Plaintiff's reported thumb and index pain. A.R. 28 (citing A.R. 342). Additionally, the ALJ relies on several medical reports that predate Plaintiff's alleged disability onset. A.R. 28 (citing A.R. 367, 371). The ALJ cites a May 2012 report which found that Plaintiff did not exhibit signs of acute distress and was observed to be well-developed and well-nourished, A.R. 28, but the ALJ failed to acknowledge that this report noted evidence of swelling and tenderness and a diagnosis of lumbago, and emphasized that Plaintiff "is very motivated to continue to work," A.R. 353. A July 2013 report from Dr. Randall Porter found that Plaintiff exhibited a normal gait, alignment, and range of motion and did not exhibit tenderness or muscle spasm related to the lumbar spine. A.R. 506. Dr. Porter also reviewed an MRI and found no "significant disc herniation or stenosis." A.R. 506. But this report noted high levels of back pain, decreased strength in the upper extremities, decreased reflexes, and decreased sensory capabilities in the lower extremities. A.R. 506-507. Dr. Porter made referrals for pain management, "CT of the cervical to evaluate the fusion," and an EMG by Dr. Syal. A.R. 508. This subsequent EMG was "consistent with the diagnosis of left Sciatic neuropathy." A.R. 549. And, as noted by the ALJ, a subsequent MRI found degenerative disc bulges, a moderate to large annular tear, significant central canal stenosis, mild bilateral foraminal stenosis, and moderate facet arthrosis. A.R. 551. The Court does not find any conflict or issue requiring resolution in the record.

The ALJ did not address listing 1.04A, and has not had an opportunity to review the seven lay witness statements which Plaintiff submitted to the Appeals Council or reconsider the opinion of Dr. Steingard, but this does not mean that the record is incomplete. Administrative proceedings related to these issues are not necessary or even useful where Dr. Kennedy's opinion independently requires a finding of disability. The opinions of Dr. Steingard and Plaintiff's family and friends, if taken as true, would recommend additional limitations to the RFC and do not conflict with Dr. Kennedy's opinion. *See* 494-95 (concluding among other things that Plaintiff is capable of adapting

to very simple, straightforward and limited changes but has a poor ability to deal with frustration and stress), 299-311 (noting among other things that Plaintiff receives help taking care of her grandchildren).

The Court's independent evaluation of the record fails to reveal any substantial grounds for doubting that Plaintiff is disabled. Therefore, remand for an award of benefits is the appropriate remedy in this case.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits based on Plaintiff's application dated October 3, 2012, with a finding of disability beginning January 1, 2012. The Clerk is directed to **terminate** this action.

Dated this 30th day of May, 2017.

_____
David G. Campbell
United States District Judge